[No. 18729-5-I. Division One. December 21, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. DOUGLAS W. FALLING, *Appellant.*

48

*Scott Engelhard* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Daniel L. Kinerk, Deputy,* for respondent.

RINGOLD, A.C.J.—The defendant, Douglas W. Falling, pleaded guilty to the crime of rape in the first degree. He was given an exceptional sentence of 120 months, 38 months greater than the longest presumptive sentence. Falling contends that he was denied due process because he had no prior notice that an exceptional sentence was under consideration by the court. He also challenges the sentence as unjustified and clearly excessive.

On July 8, 1985, sometime after 11 p.m., Falling broke into the victim's apartment while she was asleep in her bedroom. Falling forced her to engage in vaginal and oral intercourse with him. The commission of the acts lasted 20 to 30 minutes, during which Falling repeatedly called the victim a "bitch" and threatened to kill her if she resisted or screamed. The presentence report states that Falling used a knife to threaten the victim and held the blade against her neck and arm, although Falling disputes this. Before departing he threatened to kill her if she called the police.

On April 15, 1986, Falling pleaded guilty to the crime of first degree rape. The standard sentencing range for this crime is 62 to 82 months; the prosecutor recommended 65 months. The maximum sentence is life.

The court sentenced the defendant to 10 years in prison. Falling appeals the sentence.

### IMPOSITION OF EXCEPTIONAL SENTENCE WITHOUT PRIOR NOTICE

The sentencing court imposed an exceptional sentence sua sponte. Falling contends that because he was not given express notice of the court's intention prior to sentencing he was denied a fair opportunity to refute the finding of aggravating circumstances relied upon by the court and that such lack of notice denied him his due process right to a fair hearing.

The Sentencing Reform Act of 1981 (SRA) sets forth the procedure for the sentencing court. RCW 9.94A.090 details the sentencing procedure at the time of the plea; RCW 9.94A.110 describes the subsequent sentencing procedure. The statute does not require express notice to the defendant that the court is considering imposing an exceptional sentence. There is also no Washington case law requiring such notice.

Rather, in a similar case, where the trial court imposed an exceptional sentence sua sponte and without express notice to the defendants, the court rejected the contention that the defendants were denied a fair opportunity to refute the findings of aggravating factors, which constituted a violation of their due process rights to a fair hearing. In *State v. Dennis,* 45 Wn. App. 893, 898 & n.2, 728 P.2d 1075 (1986), the defendants received exceptional sentences after pleading guilty to first degree rape and first degree kidnapping. The reviewing court found that notice of the possibility of an exceptional sentence sufficient to satisfy their rights to due process was provided in the statements the defendants signed on their guilty pleas and in their written plea agreements. Notice was also contained in the trial court's colloquy with the defendants at the time of their pleas. *Accord, State v. Hartley,* 41 Wn. App. 669, 672, 705 P.2d 821 (1985).

In *State v. Gunther,* 45 Wn. App. 755, 727 P.2d 258 (1986), the prosecutor notified Gunther after the trial but before sentencing that he would seek an exceptional sentence. Gunther maintained on appeal that his due process rights were violated because he did not receive notice prior to trial. In rejecting Gunther's contention, the court quoted from D. Boerner, *Sentencing in Washington* § 9.19 (1985), that:

The reason that a notice requirement was not included [in the SRA] is that an exceptional sentence

is a possibility in every sentencing under the Sentencing Reform Act. To require that each defendant be given notice of that ever–existent potentiality would be redundant. . . . The possibility of an exceptional sentence always exists, and notice of that fact is inherent in the statutory provisions which create the possibility.

*Gunther,* at 758.

Relying on *State v. Gutierrez,* 37 Wn. App. 910, 684 P.2d 87 (1984), Falling argues that the notice requirement of the Juvenile Justice Act of 1977 (JJA) for finding a manifest injustice should apply to the SRA. In *Gutierrez* the court held that a defendant must be given reasonable notice when the trial court raises sua sponte the issue of a manifest injustice finding. Falling then cites *State v. Oxborrow,* 106 Wn.2d 525, 723 P.2d 1123 (1986) as authority that the same high standards of due process required by the JJA are applicable where an exceptional sentence above the standard range is imposed.

▮ Falling's argument is faulty for a number of reasons. *Gutierrez* is inapposite because it expressly relied on *State v. Whittington,* 27 Wn. App. 422, 618 P.2d 121 (1980), which applied to a manifest injustice finding the notice requirement applicable to a deadly weapons finding or a habitual criminal proceeding. *State v. Gunther, supra,* on the other hand, found that *Whittington* is irrelevant to the issue of reasonable notice of an exceptional sentence. The court stated that the notice required for an exceptional sentence differs from that required for establishing a deadly weapons finding or in a habitual criminal proceeding. *Gunther,* at 758. Moreover, the JJA contains a notice requirement, RCW 13.40.140(7), but the SRA does not. *Oxborrow* only stands for interpreting the term "clearly excessive," found in the SRA, in a manner consistent with the same term as used in the JJA. Falling also misconstrues *State v. Wood,* 42 Wn. App. 78, 709 P.2d 1209 (1985),

52

*review denied,* 105 Wn.2d 1010 (1986) which does not support his contention.[1] Finally, Falling ignores *State v. Dennis, supra.*

In the case sub judice the court was not required to provide Falling with express notice of the possibility that it could impose an exceptional sentence sua sponte. Notice of the possibility of an exceptional sentence was provided in the guilty plea statement that Falling signed.[2] In addition, during the colloquy required by CrR 4.2(d) between Falling and the court concurrent with his plea the court informed Falling that an exceptional sentence was possible and Falling asserted his understanding of that possibility.[3] Falling

---

[1]The trial court in *State v. Wood, supra,* imposed an exceptional sentence based on four aggravating factors. One of the factors was a Western State Hospital diagnosis of the defendant as an untreatable sexual deviant. The defendant disputed the report's conclusion prior to sentencing.

On appeal the court treated the diagnosis as an aggravating factor and stated that a factor may not be used to justify an exceptional sentence when it has been disputed and an evidentiary hearing was not held. The case was remanded for an evidentiary hearing on the disputed factors.

In *Wood,* all of the factors justifying the exceptional sentence were either disputed or improper. Here, on the other hand, there are sufficient justifications for the sentence without the Western State Hospital report. *Wood* is relevant because it classifies the diagnosis pertaining to future dangerousness and amenability to treatment as just another aggravating circumstance, rather than singling it out as a "special" factor that must be considered and, if disputed, must be the subject of an evidentiary hearing.

[2]Paragraph 13 of the statement reads: "I have been informed and fully understand that the court does not have to follow anyone's recommendation as to sentence. I have been fully informed and fully understand that the court must impose a sentence within the standard sentence range unless the court finds substantial and compelling reasons not to do so." Falling also understood that the maximum sentence for his crime was life in prison and $50,000 fine.

[3]CrR 4.2(d) requires the court to determine, prior to accepting a guilty plea, that the plea is made "voluntarily, competently and with an understanding of the . . . consequences of the plea." The "consequences of the plea" include the possibility that the maximum sentence may be imposed. *State v. Barton,* 93 Wn.2d 301, 305, 609 P.2d 1353 (1980); CrR 4.2(g). Falling has not claimed that the court violated CrR 4.2(d). We do not, therefore, consider the issue of whether the CrR 4.2(d) colloquy was defective. Falling did not submit a transcript of the colloquy to the court. This court will not consider matters not made part of the record. *State v. Armstead,* 13 Wn. App. 59, 533 P.2d 147 (1975).

had an opportunity to and did dispute[4] several of the facts that could have justified imposing an exceptional sentence, including the report by Western State Hospital that Falling was not amenable to treatment. Falling had sufficient notice that an exceptional sentence was a possibility.

### BASES FOR AN EXCEPTIONAL SENTENCE

■ In reviewing an exceptional sentence, the court determines whether the sentencing court's justifications for the sentence are supported by the record. RCW 9.94A-.210(4)(a); *State v. Nordby,* 106 Wn.2d 514, 517, 723 P.2d 1117 (1986). If so, the court then considers whether the sentencing court's reasons in fact justify the exceptional sentence. RCW 9.94A.210(4)(a); *Nordby,* at 518. If there are reasons supported by the record that justify the exceptional sentence, the sentence may be reversed only if it is clearly excessive. RCW 9.94A.210(4)(b); *Nordby,* at 517.

Certain factors may not be used to justify an exceptional sentence. The reasons for imposing an exceptional sentence must encompass factors other than those that are inherent to the offense and are used in computing the presumptive range for the charge. *Nordby,* at 518. Nor may the reasons be based on facts that establish the elements of a more serious or additional crime. RCW 9.94A.370(2); *State v. Woody,* 48 Wn. App. 772, 779, 742 P.2d 133 (1987). Finally, where a defendant disputes material facts and the trial court does not then hold an evidentiary hearing, those facts may not be considered. RCW 9.94A.370(2); *State v. Wood,* 42 Wn. App. at 82.

Falling contends that the exceptional sentence was not justified. Each of the aggravating circumstances relied upon by the sentencing court as justification, according to Falling, was either disputed or was an element of the crime charged or of a more serious or additional crime.

---

[4]Falling waited until after the sentence was imposed to dispute the facts. In light of our resolution of the issues presented in this case, we do not consider the effect of Falling's failure to dispute the facts in a timely fashion.

The sentencing court justified the exceptional sentence by the following findings:

1. The rape took place in the victim's residence,

2. Falling used a knife in the commission of the rape,

3. The rape was a prolonged ordeal of sexual abuse of almost every nature,

4. Falling subjected the victim to a continuing series of threats,

5. The act was callous, cruel, and depraved, and

6. Falling showed no remorse or recognition of responsibility.

In response to these findings, Falling argues that it is inherent in the crime of first degree rape that the act occur in the victim's residence and that it be accompanied by the threatened or actual use of a deadly weapon. He denies that he used a knife, and that the length of the ordeal and the fact of two penetrations are aggravating circumstances. Falling also disputes that he showed no remorse or acceptance of responsibility for his act. Finally, he asserts that the court's description of the rape as callous, cruel, and depraved is a mere conclusion and cannot justify an exceptional sentence. Falling does not dispute that the rape occurred in the victim's bedroom, that he penetrated the victim more than once, and that before, during, and after the rape Falling threatened to kill the victim if she did not cooperate or if she notified the police.

The threatened use of a knife in the commission of a rape is an element of rape in the first degree, RCW 9A.44-.040(1)(a), and hence cannot justify an exceptional sentence, *see Nordby,* 106 Wn.2d at 518.[5] The court's finding that the act was "callous, cruel and depraved" is not a justification since it is a subjective characterization of the rape rather than an aggravating circumstance. Falling disputed that he showed no remorse or recognition of responsibility.

---

[5]In light of this conclusion it is a moot question whether Falling in fact disputed that he used a knife. Despite his claim there is no evidence in the record of such a dispute.

The sentencing court failed to hold an evidentiary hearing on this matter. Absent a hearing this factor cannot justify the exceptional sentence. *State v. Wood, supra.*

■ The remaining reasons are supported by the record and justify the exceptional sentence. An exceptional sentence may be imposed where the defendant's conduct during the commission of the offense manifested deliberate cruelty to the victim. RCW 9.94A.390(2)(a). Throughout the ordeal Falling threatened to injure or kill the victim. He penetrated her twice and demonstrated contempt for her by repeatedly calling her "bitch." Each of these factors is a manifestation of deliberate cruelty to the victim and justifies the exceptional sentence. *State v. Hernandez,* 48 Wn. App. 751, 740 P.2d 374 (1987); *State v. Cermak,* 344 N.W. 2d 833, 840 (Minn. 1984) (defendant threatened to "break every bone" in the victim's body). Minnesota cases on exceptional sentences are persuasive authority in Washington. *Nordby,* at 521 n.5 (Utter, J., dissenting); *Wood,* 42 Wn. App. at 81.

■ The fact that Falling raped the victim twice justified the exceptional sentence for another reason. The infliction of multiple incidents per victim is an aggravating factor that justifies exceeding the presumptive sentence. *State v. Armstrong,* 106 Wn.2d 547, 550, 723 P.2d 1111 (1986).

■ Falling raped the victim in her bedroom. This was an invasion of her "zone of privacy" which is also an aggravating circumstance. *State v. Ratliff,* 46 Wn. App. 466, 731 P.2d 1114 (1987); *State v. Van Gorden,* 326 N.W.2d 633 (Minn. 1982). Falling

> did not just invade the victim sexually but also invaded the zone of privacy surrounding and including her home. As a result, the victim has to contend psychologically not only with the fact that she was sexually assaulted in a brutal way but also with the fact that her home is no longer the island of security that she perhaps thought it was.

(Citations omitted.) *Van Gorden,* at 635.

The above reasons justify imposition of an exceptional sentence in this case.

## Is Sentence Clearly Excessive?

■ Falling contends that even if an exceptional sentence is justified in this case, his 10–year prison term is "clearly excessive." RCW 9.94A.210(4)(b). The standard of review for this claim is whether the sentencing court abused its discretion. *State v. Armstrong*, 106 Wn.2d at 551–52. The sentence should be reversed as "clearly excessive" only if the sentencing court's action was unreasonable or not based on tenable grounds. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971); *State v. Armstrong, supra* at 551. Rape in the first degree is a class A felony, RCW 9A.44.040, with a maximum penalty of life in prison plus a $50,000 fine. RCW 9A.20.021(1)(a). The rape in this case was not typical. Rather, it was distinguished by its cruelty and dehumanizing aspects. The sentencing court did not abuse its discretion.

We affirm the sentence.

Coleman and Webster, JJ., concur.