[No. 53276–1. En Banc. July 16, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v.
DOUGLAS S. McALPIN, *Appellant.*

*Steve Dixon* and *Crawford, McGilliard, Peterson & Yelish,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* and *Reinhold P. Schuetz, Deputy,* for respondent.

CALLOW, J.—Douglas McAlpin received a sentence of 90 months following his plea of guilty to a charge of first degree robbery committed on the first day of April 1985. The sentence, signed on the 13th day of May 1985, exceeded the presumptive sentence range established under the Sentencing Reform Act of 1981 (SRA), RCW 9.94A. The defendant appealed. We affirm.

The defendant, 18 years of age, was charged with first degree robbery, conspiracy to commit first degree robbery, and second degree burglary. He pleaded guilty to all three offenses. The trial court sentenced him to 90 months on the robbery charge, 49½ months on the conspiracy charge, and 9 months on the burglary charge, with all terms to be

served concurrently. He challenges only the 90 months sentence.

Under the SRA the defendant's presumptive sentence range for first degree robbery was 46 to 61 months. This range, which is based on the seriousness of the crime committed and the offender's "criminal history", accounted for: (1) the defendant's two other current convictions for conspiracy and burglary; and (2) two prior juvenile convictions for second degree theft, both crimes being committed while the defendant was between 15 and 18 years of age and both convictions being entered on the same date. *See* former RCW 9.94A.030(19)(a); RCW 9.94A.310, .320; former RCW 9.94A.360(1), (5), (10), (11), .400(1)(a).

At the defendant's sentencing hearing, it was revealed that his actual record of juvenile crime far exceeded that which was accounted for in determining the standard sentence range. The presentence report confirmed that the defendant had, in fact, amassed a juvenile record of "three files comprising hundreds of pages". The prosecutor supplemented this report with additional information obtained from juvenile court authorities.

The defendant's juvenile record included the following: (1) prior to reaching his 15th birthday he was convicted four times for second degree burglary, and once for taking a motor vehicle without permission (all felonies); (2) between the ages of 15 and 18, he had been found guilty of false reporting and third degree malicious mischief (both misdemeanors); (3) he had been committed to juvenile institutions on four occasions; and (4) he had had "various additional felony arrests which were handled informally."

The presentence report described the defendant as a "textbook sociopath" who had no remorse for his crimes, a long history of drug abuse as a youth, and two episodes in which he had tortured animals. While in the Kitsap County Corrections Center, sharpened toothbrushes were taken away from him. The report aptly characterized the defendant as an "exceedingly dangerous young man".

The defendant's counsel did not object to the introduc-

tion of the above record at any time prior to the trial court's oral pronouncement of sentence. The trial court had explicitly offered counsel the opportunity to challenge the record, and counsel declined the invitation:

THE COURT: Before we go any further, [counsel], are you challenging the juvenile record?

[DEFENDANT'S COUNSEL]: I am not, Your Honor. I am handing up a scoring sheet which I used that shows that I am in agreement as to what the standard range is.

In addition to the juvenile record, it was disclosed that the defendant, in entering his guilty plea to the first degree robbery charge, had also signed a plea bargaining agreement. The prosecutor had agreed not to file charges regarding additional crimes to which the defendant had confessed, and for which he had agreed to make restitution.

The prosecutor recommended a sentence of 61 months, the top of the presumptive range. The trial court, however, imposed a 90–month exceptional sentence. The court cited the following reasons for imposing this sentence:

That the defendant has an extensive criminal history, as set forth in the presentence report . . . That such criminal history includes at lease five (5) felony convictions as a juvenile prior to the defendant's fifteenth birthday, four (4) commitments to juvenile institutions and various additional felony arrests which were handled informally. That in the course of the police investigations of the instant offenses the defendant also confessed to his involvement in additional burglaries or criminal trespasses with which he was not charged but for which he agreed to make restitution. That such convictions were not computed as prior criminal history and thus the defendant is not being penalized twice for his behavior.

That the defendant is a danger to the community, as indicated by his actual criminal history and the early point in his life at which he first had contact with the criminal justice system.

That the defendant is a sophisticated criminal, as is reflected by his long criminal experience and background, irrespective of the fact that the crimes for which he is presently being sentenced are not of the same sophistication as, for example, computer theft.

That it is in the best interests of justice and community that an exceptional sentence be imposed in this matter.

The defendant appealed the exceptional sentence, *see* RCW 9.94A.210(2). We accepted certification.

## I

The appellate review of exceptional sentences is governed by RCW 9.94A.210(4), which provides:

To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

Our first task is to determine whether the trial court's reasons for imposing an exceptional sentence are supported by the record. This is a factual inquiry and the trial court's findings will be upheld unless they are clearly erroneous. *State v. Nordby,* 106 Wn.2d 514, 517–18, 723 P.2d 1117 (1986).

The defendant's lengthy juvenile record is amply documented, both in the presentence report and in the information which the prosecutor obtained from juvenile court authorities. The defendant now contends, however, that this record is inaccurate. He asserts that he is entitled to an evidentiary hearing to challenge the record. *See* RCW 9.94A.370. We disagree.

At no time prior to the trial court's oral pronouncement of sentence did defendant's counsel challenge the accuracy of the juvenile record, even though the trial court explicitly afforded him the opportunity to do so. It may be that counsel did not challenge the juvenile record because he concluded that the best tactical choice was to avoid emphasizing the record to the sentencing judge. Nevertheless, the absence of a timely challenge to the record or a timely request for an evidentiary hearing waives this issue for purposes of appellate review. *See State v. Gunther,* 45

Wn. App. 755, 759, 727 P.2d 258 (1986); *State v. Harp,* 43 Wn. App. 340, 343 n.1, 717 P.2d 282 (1986). In any event, there is nothing to suggest that the defendant's juvenile record is inaccurate in any way. We uphold the trial court's findings as not clearly erroneous.

## II

Next, we must independently determine, as a matter of law, whether the trial court's reasons justify an exceptional sentence. RCW 9.94A.210(4)(a). *Nordby,* at 518. There must be "substantial and compelling" reasons for imposing such a sentence. RCW 9.94A.120(2). A list of aggravating circumstances is contained in RCW 9.94A.390(2); however, this list is illustrative only and not an exclusive or exhaustive compilation of what constitutes "substantial and compelling reasons".

## A

■ We turn first to the trial court's consideration of the defendant's lengthy record of juvenile felonies. Generally, "criminal history" may not be used to justify an exceptional sentence, because it is one of two factors (the other being the "seriousness level" of the current offense committed) which is used to compute the presumptive sentence range for a particular crime. *See* RCW 9.94A.310–.330. A factor used in establishing the presumptive range may not be considered a second time as an "aggravating circumstance" to justify departure from the range. *Nordby,* at 518 & n.4; *State v. Hartley,* 41 Wn. App. 669, 671, 705 P.2d 821, *review denied,* 104 Wn.2d 1028 (1985).

The term "criminal history" as used in the SRA for purposes of the presumptive range calculation includes only certain types of juvenile crimes. Specifically, it is limited to *juvenile felonies committed while the defendant was between 15 and 18 years of age.* RCW 9.94A.030(8)(b); RCW 9.94A.360(1). The trial court, recognizing this limitation, did *not* rely on the defendant's two prior juvenile convictions for second degree theft, both committed while he was between 15 and 18 years of age, as reasons to impose

an exceptional sentence. These crimes had already been considered when computing the presumptive sentence range.

On the other hand, the trial court did cite the defendant's five prior pre–age–15 felony convictions as aggravating factors justifying an exceptional sentence. The defendant asserts that this constituted error; he argues that the Legislature, by excluding such crimes from the presumptive range calculation, intended to exclude consideration of them entirely. We disagree.

One of the overriding purposes of the sentencing reform act is to ensure that sentences are proportionate to the seriousness of the crime committed and the defendant's criminal history. RCW 9.94A.010(1). This purpose would be frustrated if a court were required to blind itself to a significant portion of a defendant's juvenile criminal record. We find no justification for the defendant's argument. Such an interpretation of the sentencing reform act would operate to erase from the record the true circumstances of an offender's past, thus precluding the trial court from evaluating what might be one of the most significant aspects of an offender's personality. The sentencing reform act does not indicate that the Legislature intended to establish that all criminal convictions prior to age 15 would be purged from the ken of the sentencing judge. The trial court here did not err in concluding that a defendant who has amassed an extensive and recent record of pre–age–15 felonies is significantly different from a defendant who has no record at all. Society is entitled to view the long–term repeater of crimes from an early age as a greater threat and as requiring longer institutional supervision than one whose criminal proclivities are not as deeply ingrained. The court also correctly concluded that the defendant here would not be doubly penalized if these crimes were considered in imposing an exceptional sentence, since they are not part of the standard range calculation.

The fact that pre–age–15 felonies are not among the SRA's listed "aggravating circumstances" (*see* RCW 9.94A-

.390) is not determinative. The SRA explicitly states that the listed factors are illustrative only and not exclusive. Furthermore, the Legislature recognized that "not all exceptional fact patterns can be anticipated," Washington Sentencing Guidelines Comm'n, *Sentencing Guidelines Implementation Manual* § 9.94A.390 comment (1984), and that the sentencing court must be permitted to tailor the sentence to the facts of each case. *See Nordby,* at 516. It is sufficient that the reasons for an exceptional sentence be "substantial and compelling". RCW 9.94A.120(2). Absent an express legislative mandate that pre–age–15 felonies be ignored entirely, we decline to rewrite or modify the language of the SRA to reach the result sought here by the defendant. *See Cooper's Mobile Homes, Inc. v. Simmons,* 94 Wn.2d 321, 326, 617 P.2d 415 (1980) (courts may not modify or add to statutory language under the guise of interpretation).[1]

## B

The trial court cited the following two findings as additional aggravating factors:

> ■ That [the defendant's] criminal history includes . . . various additional [juvenile] felony arrests which were handled informally.
> ■ That in the course of the police investigations of the instant offenses the defendant also confessed to his involvement in additional burglaries or criminal trespasses with which he was not charged but for which he agreed to make restitution.

We agree with the defendant that the trial court improp-

---

[1]We agree with the trial court's additional findings that the defendant is a "danger to the community" and a "sophisticated criminal, as is reflected by his long criminal experience and background". We also note that the defendant has been committed to juvenile institutions on four occasions. However, as these findings are simply restatements of the fact that the defendant has a lengthy criminal record, they may not be considered as additional aggravating factors. *See State v. Hartley,* 41 Wn. App. 669, 671, 705 P.2d 821, *review denied,* 104 Wn.2d 1028 (1985). Likewise, the trial court's finding that "the best interests of justice and community" require an exceptional sentence is simply a legal conclusion, and not an additional aggravating factor.

erly relied on the above findings. The sentencing reform act bars the court from considering unproven or uncharged crimes as a reason for imposing an exceptional sentence. RCW 9.94A.370, at the time of sentencing, provided *inter alia*:

> Real facts that establish elements of a higher crime, a more serious crime, or additional crimes cannot be used to go outside the presumptive sentence range except upon stipulation.[2]

(Laws of 1984, ch. 209, § 20.) In D. Boerner, *Sentencing in Washington* § 9.16, at 9–49 to 9–50 (1985), the author states:

> The policy reasons behind this provision are obvious, and sound. To consider charges that have been dismissed pursuant to plea agreements will inevitably deny defendants the benefit of their bargains. If the state desires to have additional crimes considered in sentencing, it can insure their consideration by refusing to dismiss them and proving their existence. . . .
> . . . *Defendants will be held accountable for what they have been convicted of, but not for crimes that the prosecution either could not or chose not to prove.*

(Footnotes omitted. Italics ours.)

The "real facts" or "established facts" concept excludes consideration of either uncharged crimes or of crimes that were charged but later dismissed. *State v. Ratliff*, 46 Wn. App. 466, 468–69, 731 P.2d 1114 (1987); *State v. Swanson*, 45 Wn. App. 712, 714–16, 726 P.2d 1039 (1986); *State v. Payne*, 45 Wn. App. 528, 532 n.1, 726 P.2d 997 (1986);

---

[2]RCW 9.94A.370(2) now reads:

"In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. Acknowledgement includes not objecting to information stated in the presentence reports. Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point. The facts shall be deemed proved at the hearing by a preponderance of the evidence. Facts that establish the elements of a more serious crime or additional crimes may not be used to go outside the presumptive sentence range except upon stipulation or when specifically provided for in RCW 9.94A.390(2)(c), (d), and (e)." Laws of 1987, ch. 131, § 1, p. 442.

*State v. Harp,* 43 Wn. App. 340, 342–43, 717 P.2d 282 (1986). The rule is equally applicable here. It is not sufficient that the defendant has a record of arrests which were "handled informally". Nor is it sufficient that the defendant confessed to additional uncharged "burglaries or criminal trespasses". Since these arrests and confessions have not resulted in convictions, they may not be considered at all.

We conclude that some of the trial court's reasons for imposing the exceptional sentence could not be considered as aggravating factors. However, the defendant's lengthy record of pre–age–15 felonies, standing alone, is a substantial and compelling reason and justification for imposing the exceptional sentence. *State v. Armstrong,* 106 Wn.2d 547, 550, 723 P.2d 1111 (1986). The trial court did not err in deciding to impose a sentence outside the standard range.

### III

Our final task is to determine whether the sentence imposed on the defendant was "clearly excessive". A sentence will be deemed clearly excessive only if the trial court abused its discretion in fixing the duration of the sentence. *State v. Oxborrow,* 106 Wn.2d 525, 530, 723 P.2d 1123 (1986).

The trial court imposed a sentence of 90 months for the defendant's first degree robbery conviction, where the standard range provides for a sentence of 46 to 61 months. The statutory maximum punishment for first degree robbery, by contrast, is life imprisonment. RCW 9A.20-.021(1)(a); 9A.56.200. The sentence imposed thus does not approach the statutory maximum. Moreover, the defendant's past record clearly demonstrates that he is a danger to society. He has amassed a lengthy record of juvenile crimes, including several felony convictions. The presentence report, in addition, describes him as a "textbook sociopath" and "an exceedingly dangerous young man" who has no

remorse for his crimes.[3] As the presentence report further notes:

All the tools available to the juvenile rehabilitative system have been utilized on McAlpin's behalf, to no benefit. . . . [T]here is still room for the Court to seek to protect the community. This can be done best by maximizing the time between sentencing, and when McAlpin is again available to victimize the community.

We hold that the defendant's sentence is not clearly excessive.

The judgment is affirmed.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, GOODLOE, and DURHAM, JJ., concur.

Reconsideration denied September 4, 1987.

---

[3]As stated in *State v. McGee,* 347 N.W.2d 802, 806 n.1 (Minn. 1984), "there may be cases in which the defendant's lack of remorse could . . . be considered as evidence bearing on a determination of the cruelty . . . of the conduct on which the conviction was based. Further, there may be cases where a defendant's lack of remorse is evidence which would be relevant to a determination of the defendant's amenability or unamenability to probation." *But see State v. Schmit,* 329 N.W.2d 56, 58 n.1 (Minn. 1983).